UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHARLES BUTLER                                              CIVIL ACTION

VERSUS                                                              NO. 07-5562

N. BURL CAIN, WARDEN                                  SECTION "C"

**ORDER AND REASONS**

Before the Court is a petition for habeas corpus by Charles Butler ("Petitioner"), filed pursuant to 28 U.S.C. § 2254. Petitioner, acting *pro se*, is seeking relief from his May 1, 2003 conviction for attempted manslaughter under LA. REV. STAT. §§ 14:31 and 14:27, for which, after a multiple bill hearing, he was sentenced to life in prison without the benefit of parole according to the Louisiana Habitual Offender Law, LA. REV. STAT. § 15:529.1. Petitioner is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. As grounds for relief, Petitioner claims: (1) that the sentencing under the Louisiana Habitual Offender Statute in this case amounts to an unconstitutional *ex post facto* application of the law; (2) he received ineffective assistance of counsel because the trial attorney failed to determine Petitioner's sanity prior to, or during trial; (3) life imprisonment is an excessive sentence in this matter. For the reasons set forth below, this petition is **DENIED WITH PREJUDICE**.

## I. CASE HISTORY

Petitioner was charged by bill of information with attempted second degree murder in violation of LA. REV. STAT. §§ 14:30.1 and 14:27. Fed. Rec., Petition for Habeas Corpus, p. 2. Petitioner moved to suppress a statement and confession; a hearing was held on September 16, 2002, at which, the trial judge denied the motions. State Rec. Vol. 1, Minute Entry. Following a three day trial, Petitioner was convicted of the lesser offense of attempted manslaughter on May 1, 2003. *Id.* On September 22, 2003, Petitioner was sentenced to twenty (20) years at hard labor. *Id.* Following a Multiple Bill hearing on March 19, 2004, Petitioner was adjudged a quadruple felony offender; the court set aside the original twenty (20) year term, and sentenced Petitioner to life in prison without benefits. *Id.* The Louisiana Court of Appeal for the Fifth Circuit summarized the facts of the case during Petitioner's direct appeal as follows:

> Shortly after midnight on March 11, 2002, Ms. Batiste [the victim] was at home with a male friend, when Butler telephoned her, asking whose car was in her driveway. He began cursing her and demanding that she step outside. She looked through her peephole and saw Butler's van outside. As soon as she moved her face away from the peephole, Butler kicked in her door. He walked toward her bedroom, but then turned and walked out the front door, stating that he was going to get her. She heard the sound of a can scraping on her front porch, and then Butler doused her with gasoline three or four times and ignited her with a fireplace/barbecue lighter he pulled from his pocket. Ms. Batiste ran to her bedroom, where her male friend helped suppress the fire on her. She telephoned 911, her five sisters, and Butler's sister and mother. She remembered the ambulance and police arriving, but the next thing she remembered after that was waking up in the burn center in Shreveport, Louisiana. She was burned over seventy percent of her body, from mid-thigh to her forehead.
>
> It was stipulated that if Dr. Charles Kelly, one of the emergency room physicians at Charity Hospital who initially treated the victim, were called as a witness he would testify that the victim had burns to seventy percent of her body.
>
> Butler testified at trial that after Ms. Batiste let him inside her home that night, he went into the bedroom and saw a man in bed. Butler testified that he started to walk out of the home. On the way out, he picked up a bottle of gas that was inside, intending to do some damage to Ms. Batiste's home. He testified that as he

>opened the top of the bottle, the gas went "whoosh." He also testified that at the same time, Ms. Batiste bumped him and gas spewed on him and Ms. Batiste. He further testified that he grabbed the lighter off of a table, and lit it. When the room ignited, he dropped the lighter. He denied taking the gas and the lighter to Ms. Batiste's home, and that he did not intend to hurt or kill her.
>
>Butler gave a taped statement at 4:38 a.m., on March 11, 2002, the morning of the incident, to New Orleans Police Detectives Fred Bates Jr. and Darryl Ribet. In the statement, Butler stated that on the night in question he telephoned Ms. Batiste to let her know that he was coming over to get some clothes out of the trunk of his car, which in fact, Ms. Batiste testified was parked in her driveway. Butler stated that he came over and asked to be let inside, and was let in. After Ms. Batiste informed him that she had company, Butler stated that he walked to the bedroom, where he saw her male friend in the bed. Butler said he turned around and walked towards the front door, and stated that he observed a can of gasoline inside, near the front door. He stated that he grabbed it and dowsed Ms. Batiste with gas, picked up the lighter and flicked it, igniting gasoline vapors and Ms. Batiste.
>
>Charles Sherman, Ms. Batiste's friend, who was present in her home that night, testified at trial that he had fallen asleep in the bedroom. He testified that he was awakened when Ms. Batiste came running into the room in flames. He helped put out the flames on her and the fire in the dining room area of the residence. He testified that his car was parked in the driveway that night.

*State v. Butler*, 894 So.2d 415, 427 (La.App 4 Cir. 2005). The Louisiana Fourth Circuit Court of Appeal affirmed Petitioner's convictions and sentence on January 12, 2005. *State v. Butler*, 894 So.2d 415, 417-18 (La.App 4 Cir. 2005). And, the Louisiana Supreme Court denied Petitioner's Application for Writ of Certiorari and/or Review on May 13, 2005. *State v. Butler*, 902 So.2d 1017 (La. 2005).

Subsequent to his direct appeal, Petitioner filed an application for post-conviction relief on May 12, 2006. State Rec. Vol. 1, Opinion of the Louisiana Fourth Circuit Court of Appeal, Case No. 2006-K-1224, p. 2. Post-conviction relief was denied by the trial court on August 10, 2006, without an evidentiary hearing. State Rec., Vol. 1, Order of the Orleans Criminal District Court, Division D. On November 2, 2006, the Louisiana appellate court denied Petitioner's writ for Post-Conviction Relief. State Rec. Vol. 1, Opinion of the Louisiana Fourth Circuit Court of

3

Appeal, Case No. 2006-K-1224. The Louisiana Supreme Court denied Petitioner's Application for Supervisory and/or Remedial Writs regarding post-conviction relief on June 15, 2007. *Butler v. Cain*, 958 So.2d 1187 (La. 2007) (denying No. 2006-K-1224). Petitioner filed the instant *habeas* petition on September 12, 2007.

## II. PROCEDURAL REVIEW

### A. Custody Requirement

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a). Physical incarceration satisfies the custody requirement. *See e.g., Maleng v. Cook*, 490 U.S. 488, 491 (1989). Here, Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Fed. Rec. Petition for *Habeas Corpus*, p. 2. Thus, Petitioner is in custody for the conviction he is attacking. Accordingly, one basis of this Court's subject matter jurisdiction over Petitioner's claim for relief is satisfied.

### B. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained. Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, which is in West Feliciana Parish, a parish that falls within the Middle District of Louisiana according to 28 U.S.C. § 98(b). However, Petitioner was convicted and sentenced in Orleans Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana. Therefore, venue lies for this petition.

### C. Timeliness

The State concedes that Petitioner timely filed his *habeas corpus* petition. Fed. Rec. Response to Habeas Corpus Petition, p. 4. Upon review, this Court agrees that the Petition is

timely. The Anti-terrorism and Effective Death Penalty Act of 1996[1] ("AEDPA") requires that a *habeas* petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes "final." Yet, AEDPA's one-year statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C.§ 2254(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998). Furthermore, "a properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000).

The Supreme Court ruled that "finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *See e.g., Clay v. United States*, 537 U.S. 522, 527 (2003); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Additionally, a petitioner has ninety days to file a writ of certiorari in the United States Supreme Court after a decision is rendered by the state's highest court. SUP. CT. R. 13(1). As noted above, the Louisiana Supreme Court denied Petitioner's direct appeal on May 13, 2005. *State v. Butler*, 902 So.2d 1017 (La. 2005). Petitioner did not appeal to the United States Supreme Court. Therefore, Petitioner's conviction became "final" on August 11, 2005, ninety days after the Louisiana Supreme Court's decision.

In this case, AEDPA's one-year statute of limitations was tolled when Petitioner filed his application for post-conviction relief on May 12, 2006. State Rec. Vol. 1, Application for Post-

---

[1] Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

Conviction Relief. AEDPA's statute of limitations remained tolled for the duration of time in which Petitioner's post-conviction relief application was pending in the state judicial system. Here, Petitioner's post-conviction relief application was denied by the Louisiana Supreme Court on June 15, 2007. *Butler v. Cain*, 958 So.2d 1187 (La. 2007). As Petitioner filed the petition *sub judice* on September 12, 2007, the petition is timely because less than 365 days has elapsed since the state conviction became final, excepting the time during which Petitioner's state application for post-conviction relief was pending.[2]

### D. Exhaustion

Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). The entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a "habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claim) (internal quotations omitted) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509

---

[2] Here, a total of 274 days passed from August 11, 2005, when the Louisiana Supreme Court's decision to affirm Petitioner's conviction became "final," until May 12, 2006 when Petitioner filed his state motion for post-conviction relief. AEDPA's statute of limitations was then tolled while Petitioner's claims for post-conviction relief were pending in state court. Thus, AEDPA's one-year limitations period remained tolled from May 12, 2006 until June 15, 2007 when the Louisiana Supreme Court denied Petitioner's Application for Supervisory Writs regarding his claim for post-conviction relief. Adding the additional eighty-nine (89) days between the time the Louisiana Supreme Court denied Petitioner's post-conviction application for relief (June 15, 2007) and the time Petitioner filed his *habeas* petition with this Court (September 12, 2007) to the 274 days that had previously elapsed under AEDPA's limitations period, shows that Petitioner filed his habeas petition 363 days after his conviction became "final." Accordingly, his petition is timely under AEDPA's one-year statute of limitations.

(1982). It is important to note that the issues in a *habeas* petition could have been presented to the highest state court on direct appeal, or in a state post-conviction proceeding; either is sufficient and both are not required. *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).

The exhaustion requirement is now codified by AEDPA, which provides, *inter alia*, that habeas relief "shall not be granted unless it appears that . . . (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.§ 2254(b)(1). Yet, the United States Fifth Circuit Court of Appeals has noted, 28 U.S.C. § 2254(b)(2) "allows a federal court, in its discretion, to **deny** habeas relief on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state, to further the interests of judicial economy. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original).

Here, the State failed to address exhaustion. Upon review, the Court finds that Petitioner's claims are exhausted as required by AEDPA. In this matter, Petitioner presents three (3) claims for relief in his federal *habeas* petition. Each of these claims was presented to the Louisiana Supreme Court in Petitioner's brief for post-conviction relief. State Rec. Vol. 1, Application for Post-Conviction Relief. Accordingly, Petitioner has satisfied AEDPA's exhaustion requirement. *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).

### III. STANDARD OF REVIEW

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for *habeas* petitions. The statute mandates that when a state court has adjudicated a claim on the merits, pure questions of law, as well as mixed questions of law and fact, are reviewed under 28 U.S.C.§

2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). But, questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law, and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted). A state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

IV. PETITIONER'S CLAIMS

**1. *Ex Post Facto* Sentencing**

Petitioner's first claim for relief is that a change in the multiple offender law was incorrectly and retroactively applied against him, in violation of his due process rights. Petitioner argues that an October 19, 2004 change in the multiple offender law was used by the trial court to sentence him for a crime that occurred on March 11, 2002. Petitioner asserts that he received a more burdensome sentence because the trial court relied on the Louisiana Supreme Court's 2004

8

re-interpretation of La. R.S. 15:529.1 in *State v. Everett*, 816 So.2d 1272 (La. 2002). Petitioner avers that in 2002, when he was arrested for attempted murder, a "sequential ordering" of arrests and convictions was required to qualify as "predicate offenses" against a defendant under Louisiana Supreme Court precedent. Specifically, Petitioner argues that he should have been sentenced as a multiple offender under *State ex rel. Mims v. Butler*, 601 So.2d 649 (La. 1992), which required "sequencing," instead of being adjudicated as a multiple offender under *Everett*, which altered the "sequencing" requirement. Petitioner asserts that the *ex post facto* application of *State v. Everett* violated his due process rights.

In opposition, the state argues that *ex post facto* claims regarding judicial opinions, as opposed to legislative actions, lack merit following the United States Supreme Court's ruling in *Rogers v. Tennessee*, 532 U.S. 451 (2001). The state asserts that *Everett* merely re-interpreted the existing multiple offender statute, and thus, the *ex post facto* clause is inapplicable. Additionally, the state argues that to the extent that Petitioner is arguing that the state courts improperly applied Louisiana's multiple offender statute, the claim is not cognizable on *habeas* review.

In *Rogers*, the Supreme Court held that "[t]he *Ex Post Facto* Clause, by its own terms, does not apply to courts." *Rogers*, 532 U.S. at 460. Additionally, the court stated, "[e]xtending the Clause to courts through the rubric of due process [ ] would circumvent the clear constitutional text." *Id.* The Fifth Circuit has noted that "[t]he *Rogers* Court held that the retroactive application of new interpretations of criminal statutes and judicial alterations of common law doctrines of criminal law only implicate due process limitations 'where [the new interpretation or change] is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Janecka v. Cockrell*, 301 F.3d 316, 324 n.11 (5th Cir.

2002). Thus, this Court must determine whether the Louisiana Supreme court's re-interpretation of the multiple offender statute in *Everett* was "unexpected and indefensible" by reference to the prior law.

In *Everett*, the Louisiana Supreme court noted, "[f]or purposes of analyzing the *ex post facto* implications of the Habitual Offender Law, the relevant offense is the current crime, not the predicate crime." *Everett*, 816 So.2d at 1280 (citing *State v. Rolen*, 662 So.2d 446, 448 and *United States. v. Arzate-Nunez*, 18 F.3d 730, 734 (9th Cir.1994)). Therefore, under Louisiana law, Petitioner's claim that the re-interpretation of the procedure for calculating predicate offenses is an *ex post facto* violation is questionable. Additionally, Petitioner's claim fails on the merits upon *habeas* review.

In *Mims*, the Louisiana Supreme court affirmed the "sequential requirement" for enhancing penalties under 15:529.1: "commission of the crime, or crimes, followed by conviction (equals a first offender), then commission of another crime, or crimes, followed by conviction (equals a second offender), and so forth." *Mims*, 601 So.2d at 651. Interestingly, the Louisiana Supreme court reached this conclusion following the state legislature's decision to delete the sentence from La. R.S. 15:529.1 that would have indicated that "sequencing" was necessary. Indeed, the language of the multiple offender statute was the same when the Louisiana Supreme ruled in *Mims* and *Everett*. In other words, the state legislature did not act with regard to the statute during the relevant time period; and, the judicial branch merely re-interpreted the same language. Because the same statute was given a different reasonable interpretation by the Louisiana Supreme Court, it cannot be said that the post-*Everett* calculation of predicate offenses was "unexpected" or "indefensible." Accordingly, the federal Supreme Court's ruling in *Rogers* and the Fifth Circuit's decision in *Janecka* bars the *ex post facto* clause

from applying to the Louisiana Supreme Court's ruling in *Everett*. Consequently, Petitioner's claim for *habeas* relief is denied.

### 2. Ineffective Assistance of Counsel

Petitioner next claims that his trial attorney rendered ineffective assistance of counsel in violation of his Sixth Amendment rights. Specifically, Petitioner asserts that his counsel should have "followed up on a pre-trial request for a determination of Petitioner's mental status at the time the crime was committed." Memorandum in Support of Petition for *Habeas Corpus*, p. 14. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate both a deficient performance by counsel *and* that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). In the Fifth Circuit, "[c]ounsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). And, an analysis of an attorney's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 689. "[I]t is necessary to judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Indeed, the Fifth Circuit has adopted the *Strickland test* holding: "[d]eficient performance is prejudicial only upon a showing that but for counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined." *Little*, 162 F. 3d at 860-61. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

It is important to note that petitioners bear the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also, Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697. Furthermore, an ineffective assistance of counsel claim is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003). Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1).

On *habeas* review, "[i]t is strongly presumed counsel has rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment." *Adanandus v. Johnson*, 947 F.Supp. 1021, 1036 (W.D.Tex. 1996) (citing *Strickland v. Washington*, 466 U.S. at 690; *Duff-Smith v. Collins*, 973 F.2d 1175, 1182; *Drew v. Collins*, 964 F.2d 411, 422)). "An attorney's strategic choices, usually based on information supplied by the defendant and a thorough investigation of relevant facts and law, are virtually unchallengeable." *Id.* (citing *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir.1994)). Furthermore, an attorney "is required neither to advance every nonfrivolous argument nor to investigate every conceivable matter into which inquiry could be classified as nonfrivolous." *Id.* (citing *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir.1992)). Additionally, "in all cases where this circuit has held that a trial counsel's performance was ineffective for failing to investigate properly an insanity defense, trial counsel knew that their clients had serious mental disorders." *Easley v. Dretke*, 122 Fed.Appx. 124, 129 (citing *Bouchillon v. Collins*, 907 F.2d 589, 596-97 (5th Cir.1990); *Profitt v. Waldron*, 831 F.2d 1245, 1247-49 (5th Cir.1987)). In *Bouchillon*, the attorney's failure to investigate a possible insanity defense was unreasonable because the defendant told him that he had been institutionalized several times and was taking medication for mental problems.

In contrast, there is no evidence that Petitioner told his counsel about a history of mental health problems. Further, Petitioner's counsel moved for a mental examination on April 22, 2002; and, the trial judge ordered the Petitioner examined to "determine his sanity at the time of the commission of the alleged defense." State Rec. Vol. 1, Order of Orleans Parish Criminal District Court, Case No. 399601. In response to the order, Petitioner was examined by Dr. Rapheal Salcedo and Dr. Richard Richoux. State Rec. Vol. 1. Letter from Drs. Salcedo and Richoux. The doctors submitted a letter to the trial judge on April 30, 2002, which summarized their findings: the mental examination failed to reveal evidence of "any cognitive limitations

suggesting mental retardation" or "evidence of any other major mental illness, e.g., psychosis, major affective disorder, etc." *Id.* Thus, the record reflects that Petitioner's attorney investigated the possibility of presenting an insanity defense, but there seems to have been insufficient evidence to support an insanity plea. Therefore, the Court cannot find that Petitioner has overcome the presumption that his attorney "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Adanandus*, 947 F.Supp. at 1036.

Petitioner correctly argues that evidence of his competency to stand trial is different from evidence of his mental state at the time the crime was committed. However, Petitioner, and his current counsel, have failed to make some showing that he may have been insane at the time of the offense; nor have they submitted evidence of prior mental illness. Furthermore, Petitioner was charged with attempted murder, but convicted of attempted manslaughter. Thus, it is reasonable to infer that Petitioner's attorney was successful in his trial strategy because Petitioner has received the benefit inherent in the criminal system for the "heat of passion" defense. Consequently, Petitioner has not demonstrated that his attorney's performance fell below an objective standard of reasonableness. *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Instead, the evidence shows that the trial counsel's decision not to present an insanity defense was a "conscious and informed tactical one." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (noting, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance."); *see also Williams v. Cain*, 125 F.3d 269, 278-79 (5th Cir.1997) (stating the failure to present evidence is not deficient performance, if the attorney could have concluded "for tactical reasons, that attempting to present such evidence would be unwise."). Accordingly, Petitioner's ineffective assistance claim lacks merit.

### 3. Hearsay & Procedural Default

Next, Petitioner asserts that his life sentence is excessive because he was incorrectly adjudicated a quadruple offender. Petitioner also argues that he was improperly sentenced as a fourth felony offender under La. R.S. 15:529.1 and 894.1. The state contends that this claim is without merit because Petitioner was properly sentenced as a fourth felony offender. Additionally, the state argues that any violations of state law made by the trial court during sentencing are not subject to *habeas* review.

First, this Court has already denied Petitioner's claim regarding the alleged *ex post facto* adjudication.[3] Furthermore, the state is correct in asserting that allegations regarding the inappropriate or incorrect application of state law are not properly considered on federal *habeas* review. The Fifth Circuit has noted that a Louisiana court's failure to follow state sentencing procedures is not subject to *habeas* review. *Joseph v. Butler*, 838 F.2d 786, 789 n. 2 (5th Cir. 1988). The often quoted maxim is: "a federal court does not sit as a super state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (internal quotations omitted). Specifically, "[t]he application and interpretation of Louisiana's habitual offender statute is an issue left to the Louisiana Supreme Court." *Muhammad v. Hubert*, 2007 WL 3104331, at *13 (E.D.La. October 22, 2007). Accordingly, the Court cannot grant relief on this claim.

### V. CONCLUSION

Having considered the complaint, the record, and the applicable law, it is determined that Petitioner's claims are without merit. Accordingly, Petitioner's claims are without merit and it is

---

[3] See the discussion of *Mims*, *Everett*, and *Rogers*, *supra*.

**ORDERED** that the petition of Charles Butler be **DENIED WITH PREJUDICE**. Judgment will be entered accordingly.

New Orleans, Louisiana this 10th day of March, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE